UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSSION<br>    Plaintiff<br><br>and<br><br>GODWIN ENAGBARRE and<br>JOE L. WILLIS<br>v.<br><br>WASHINGTON GROUP<br>INTERNATIONAL, INC.<br>    Defendant | Docket No.: 04-12097-GAO |

## COMPLAINT TO INTERVENE AS OF RIGHT AND JURY DEMAND

### I. INTRODUCTION

1.  This is a Complaint brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, codified at 42 U.S.C §§ 2000 *et seq.* ("Title VII"), Title I of the Civil Rights Act of 1991, Chapter 151 B of the Massachusetts General Laws Chapter 12, Section 11H, a common law claim of Intentional Infliction of Emotional Distress to intervene and Loss of Consortium in a lawsuit filed by the Equal Employment Opportunity Commission ("EEOC") before this Court, identified by Docket No. 04-12097. Intervenor Plaintiff Godwin Enagbare ("Enagbare"), is a former employee of the Defendant, Washington Group International, Inc. ("WGI"). Intervenor Plaintiff Joe Willis ("Willis"), is a former employee of Encompass Electrical Technologies "Encompass", a subcontractor hired by

Defendant WGI, the general contractor which at all times relevant controlled the entire worksite and exercised control over its subcontractor and their employees. Plaintiff Willis worked at the work site which was primarily under the control of Defendant WGI. Both Plaintiffs Willis and Enagbare filed charges with the Massachusetts Commission Against Discrimination and the EEOC alleging racial discrimination, hostile work environment, emotional distress and retaliation in employment in violation of both Federal and Massachusetts laws. Specifically, the Intervenor Plaintiffs allege the following facts:

## II. PARTIES

2. The Plaintiff, Equal Employment Opportunity Commission is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII.

3. Intervenor Plaintiff, Godwin Enagbare is an individual with a residence address of 9 Marilyn Court, Lynn, Massachusetts 01904.

4. Intervenor Plaintiff, Joe L. Willis is an individual with a residence address of 3835 Cosby, Houston, Texas 7702.

5. Defendant Washington Group International, Inc. is a Delaware corporation doing business in the Commonwealth of Massachusetts.

## III. JURISDICTION

6. This Court has subject matter jurisdiction to allow the Intervenor Plaintiffs to join this suit pursuant to Fed.R.Civ.P.24 (a) and 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. The action is authorized pursuant to Section 706 (f)(1) and (3) of Title VII. This Court has supplemental jurisdiction over pendent state law claims pursuant to 28 U.S.C. § 1367.

7. This Court has personal jurisdiction over this action because the unlawful employment practices as alleged in this Complaint were committed within the jurisdiction of the United States District Court, District of Massachusetts.

## IV. FACTS

8. Intervenor Plaintiff Enagbare is Black and of African-Nigerian descent and was employed with Defendant WGI as an Electrician from December 17, 2002 until he was terminated because of the discriminatory pretext on February 13, 2003.

9. At all times relevant to this matter, WGI was the general contractor and Encompass served as its subcontractor. WGI controlled the entire worksite and exercised control over its subcontractor, including Encompass, and their employees.

10. Intervenor Plaintiff Willis is Black and of African-American descent and was employed with Defendant Encompass as an Electrician from December 17, 2002 until he was terminated because of the discriminatory pretext on February 13, 2003.

11. While employed by WGI, Enagbare was subjected to the following acts of racial discrimination, hostile work environment, emotional distress and retaliation, among others:

   (a) When Mr. Enagbare was assigned or volunteered for the position of Temporary Foreman a/k/a Queen, the white crew members refused to perform the work assignments the Complainant assigned them because of his race and ethnicity;

   (b) On one occasion, Mr. Kenny Carpenter, a co-worker, attended a WGI safety meeting wearing an overall with a tire mark across the back of the overall. Another co-worker asked "What happened to you"? Mr. Carpenter replied, "One Black nigger threw me under the bus." Mr. Enagbare promptly notified his supervisor, Mark Pelletier and the union steward, Gary Walker, about this incident;

   (c) On or about March or April 2002 Complainant Enagbare began to notice and was notified of the appearance of racially offensive, derogatory and threatening graffiti directed at Mr. Enagbare in the bathrooms, hallways, staircase areas and throughout the worksite which was under the control of the WGI;

(d) The following is some of the contents of the graffiti: (1) Go home you nig[g]er; (2) "This is his least favorite color, white"; (3)"Godwin Fat Rat"; (4) "Godwin Suck"; (5) "Fire Godwin the Bro Fucker"; Godwin is the Bus Driving Brother Fucker"; and (6)"KKK";

(e) The General Foreman, Mark Pelletier, acquiesced to the demands of the white co-workers who refused to work under me because of my race and ethnicity;

(f) On or about February or March of 2002, Mike King, a co-worker of Complainant Enagbare to "Go back home [Africa], if you don't like America";

(g) After Mr. Enagbare's removal and constructive ban from the position of Temporary Foreman, Mike King, Mark Delaney, Joe Dumas and Ron Tar were promoted to the position despite the fact that they were the perpetrators who made racially offensive statements and threatened that they would not work under Mr. Enagbare's supervision for reasons including his race and nationality;

(h) The apprehension of imminent harm due to the racially hostile environment and constant threats made against Mr. Enagbare and his family publicly (by means of graffiti throughout the WGI work site), resulted in Mr. Enagbare being hospitalized, taken to the emergency and losing several days of work. For example, On August 6, 2002, Mr. Enagbare experienced shortness of breath and dizziness as a direct result of work related discrimination, racially hostile environment and stress. Mr. Enagbare was taken to Massachusetts General Hospital ("MGH") and treated for this episode. The medical staff performed a chest x-ray, EKG and labs in order to diagnose his condition;

(i) On September 7, 2002, Mr. Enagbare was rushed to the emergency room at MGH from work. He was admitted for three days. The doctor diagnosed him as suffering from "syncope and hypertension" due to "a combination of acute stress and severe hypertension from the stress [at work] may underlie these episodes. The doctor prescribed the several medications in connection with this medical incident;

(j) Mr. Enagbare's tools which he purchased to perform his duties while employed by the Respondent were stolen on numerous occasions during the period of racial hostile environment; and

(k) The racially hostile environment caused Mr. Enagbare great stress which necessitated a three week unpaid vacation/stress leave from December 29, 2002-January 20, 2003, which resulted in lost wages;

12. Since Plaintiff Enagbare was terminated, Defendant WGI has requested the services of electricians from the union on numerous occasions; however WGI has refused to hire Mr. Enagbare even when he was the only qualified electrician sent to the site by the union.

13. While employed by Encompass and working at the Mystic Worksite, which was under the sole control of WGI, general contractor for which Encompass provided services as a sub-contractor, Willis was subjected to the following acts of racial discrimination, hostile work environment, emotional distress and retaliation, among others:

   (a) On August 16, 2002, Alan Griffis, a caucasian co-worker of Plaintiff Willis, assaulted and battered Mr. Willis by grabbing his hand and calling him the racially offensive term "Nigger" during said altercation;

   (b) When Plaintiff Willis responded in the positive to the question posed by his supervisor Marty Kane, about whether he desired to engage in the protected activities of addressing the racial discrimination at the workplace, Mr. Kane stated "That makes my skin crawl";

   (c) Plaintiff Willis was regularly threatened by his caucasian co-workers;

   (d) Plaintiff Willis endured emotional distress which resulted in a necessary medical leave of absence from his employment;

   (e) Mr. Willis was forced by the hostile environment and the Defendants' failure to remedy such racially hostile environment to switch to the morning shift which resulted in the respondents decreasing his hourly wage from $39.50 to $33.48 from (July 24, 2002-mid September 2002) resulting in loss wages;

   (f) With the ongoing apprehension of imminent harm due to the racially hostile environment, Mr. Willis was injured on the work site when he fell off an eight foot ladder on August 21, 2002. He was seen at the Medcor Construction Services, Inc. Patient Care;

   (g) Willis informed the doctor in writing on August 21, 2002, when he fell of a ladder that he was in a "state of confusion" due to the racial threats and hostile environment. On August 23, 2002, Mr. Willis wrote a letter in which he states "I can no longer concentrate on my job, I just recently fell off a ladder due to lack of concentration. My co-workers have notice[d] that I have been worried about my safety.";

(h) The following is some of the contents of the graffiti found throughout the worksite which was under the control of WGI:

- "Joe Lewis was here and fucked the Brotherhood[.] He's the type [of] Guy that gives the black Folks a bad name!!;
- "Hi Joe Lewis you Brotherfucking NIGGER"; and
- "Encompass" Joe Lewis a true Nigger[.] We have a lot of good black brothers on this job but this guy is a [arrow pointing back to the word Nigger].

(i) The Defendant and its subcontractor Encompass retaliated against Mr. Willis by terminating his position on September 26, 2002.

## V. COUNTS

### COUNT ONE
### VIOLATION OF TITLE VII, CIVIL RIGHTS ACT OF 1964

14. The Intervenor Plaintiffs hereby restate and incorporate all paragraphs of this Complaint and the Complaint Filed by the EEOC as if fully stated herein.

15. WGI's practices deprived the Intervenor Plaintiffs of equal employment opportunities and adversely affected their employment because of their race, nationality (with respect to Mr. Enagbare) and engagement in protected activities.

16. WGI's employment practices were intentional and/or were done with malice and/or reckless indifference to the rights of Intervenor Plaintiffs.

17. As a direct and proximate result of WGI's actions, the Intervenor Plaintiffs have suffered damages.

## COUNT TWO
## VIOLATION OF MASSACHUSETTS GENERAL LAWS CHAPTER 151B

18. The Intervenor Plaintiffs hereby restate and incorporate all paragraphs of this Complaint and the Complaint Filed by the EEOC as if fully stated herein.

19. WGI is and/or was at all relevant times an employer as defined under M.G.L. c. 151B.

20. The Intervenor Plaintiffs are all members of a protected class.

21. The Intervenor Plaintiffs performed the duties of their employment at a satisfactory and professional level, yet suffered disparate treatment by Defendant and its subcontractors, agents and representatives.

22. Defendant subjected the Intervenor Plaintiffs to racial discrimination, hostile work environment, emotional distress, retaliation in employment and adverse employment actions on the basis of race and/or nationality, including disparate application of company regulation and, ultimately, retaliation in the form of wrongful termination.

23. Following the Intervenor Plaintiffs' terminations, WGI sought to fill their positions with individuals possessing similar qualifications and/or sets of skills.

24. As a direct and proximate result of WGI's actions, the Intervenor Plaintiffs have suffered damages.

## COUNT THREE
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

25. The Intervenor Plaintiffs hereby restate and incorporate all paragraphs of this Complaint and the Complaint filed by the EEOC as if fully stated herein.

26. Defendant intended to inflict emotional distress upon the Intervenor Plaintiffs and/or should have known that emotional distress was the likely result.

27. Defendant's actions were extreme, outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized society.

28. Defendant caused the Intervenor Plaintiffs to suffer emotional distress.

29. The Intervenor Plaintiffs' distress was severe and no reasonable person could be expected to endure it.

30. As a direct and proximate result of Defendant's actions, the Intervenor Plaintiffs have suffered damages.

## COUNT FOUR
## LOSS OF CONSORTIUM AS TO PLAINTIFF ENAGBARE

31. Prior to the discrimination endured by Mr. Enagbare, he was very outgoing, cheerful and enthusiastic about being with his spouse/significant other. The penile dysfunction which Mr. Enagbare suffers as a result of increasing dosage of medication to deal with the effects of the work related stress and illnesses, has adversely affected the sexual and intimacy in his marriage. Overall his relationship with his family was very good and there was little complaining.

However, after the discrimination, Mr. Enagbare's stress from work adversely affected his family life. The emotional distress and crying on his part led took its toll on the family. The stress caused a strain on the family which manifested itself in the form of arguments, shame and unwillingness to spend time with the family.

8

## COUNT FIVE
## VIOLATION OF MASSACHUSETTS CIVIL RIGHTS ACT (M.G.L. c.12, Section 11H)

32. The Intervenor Plaintiffs hereby restate and incorporate all paragraphs of this Complaint and the Complaint filed by the EEOC as if fully stated herein.

33. Defendants' actions constituted a violation of M.G.L. c.12, Section 11H by virtue of their interference by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion, with the exercise or enjoyment of Intervenor Plaintiffs' rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the Commonwealth of Massachusetts.

34. As a direct and proximate result of Defendant's actions, the Intervenor Plaintiffs have suffered damages.

## VI. PRAYER FOR RELIEF

WHEREFORE, the Intervenor Plaintiffs request that this Honorable Court award the following relief:

    a. Lost wages, back pay and other compensatory damages in an amount to be determined at trial;

    b. Punitive damages;

    c. Attorney's fees and costs

    d. Prejudgment interest;

    e. All other relief prayed for in the Complaint filed by the EEOC; and

    f. Any other relief the Court deems fair and just.

## DEMAND FOR TRIAL BY JURY

The Intervenor Plaintiffs, Godwin Enagbare and Joe L. Willis, hereby demand a trial by jury on all counts and issues so triable.

                                                   Respectfully submitted,
                                                   Godwin Enagbare and
                                                   Joe L. Willis
                                                   By their attorney

                                                 _____
                                                 Jacques A. Dessin, Esq.
                                                 Dessin & Associates, Attorney &
                                                 Counsellor At Law
                                                 236 Huntington Avenue, Suite 301-304
                                                 Boston, MA 02115
                                                 (617) 262-4800

Dated: December 30, 2004