UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOCKET NUMBER: 04-12097GAO

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,
    Plaintiff,
and

JOHN BALDWIN, LEONARD BELL,
JOHANNES KAINDOH, WAYNE HENDERSON,
GODWIN ENAGBARE and JOE L. WILLIS,
    Intervenor Plaintiffs,

v.

WASHINGTON GROUP INTERNATIONAL, INC.,
RON BENNETT, MICHAEL FOGARTY, and
DENNIS WOODRUFF,
    Defendants.

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION
## FOR A PROTECTIVE ORDER

Defendant, Washington Group International, Inc. ("WGI"), files this memorandum in support of its motion for a protective order to prevent the deposition of its President and Chief Executive Officer, Stephen G. Hanks. Mr. Hanks' Affidavit, as well as the Affidavit of Stephen T. Paterniti, are also filed in support of the motion.

### INTRODUCTION

Plaintiff, Equal Employment Opportunity Commission ("EEOC"), has brought an action against Defendant, Washington Group International ("WGI"), alleging that Defendant's employees were harassed and discriminated against on the basis of race. To date, the EEOC has deposed or is scheduled to depose several current and former managers and executives, including WGI's Corporate EEO Officer and its designated EEO representative at the construction site in Everett from which the allegations in this case arise. Notwithstanding this extensive discovery,

the EEOC has now noticed the deposition of WGI's President and Chief Executive Officer, Stephen G. Hanks ("Mr. Hanks").

WGI vigorously opposes this deposition and has moved for a Protective Order to preclude Plaintiff from taking this deposition because it is undisputed that Mr. Hanks – who is employed at WGI's corporate headquarters in Boise, Idaho – did not play any substantive role whatsoever relevant to the allegations in this case.

In short, the EEOC's attempt to depose Mr. Hanks is nothing more than an inappropriate attempt to annoy, disrupt, and unreasonably burden WGI and Mr. Hanks. Courts have routinely rejected the use of such discovery tactics, where, as here, the senior executive is far removed from the relevant issues of litigation, and does not possess any information that cannot be readily obtained from other company employees, or through less burdensome discovery procedures. Accordingly, WGI respectfully requests that this Court issue a protective order preventing the EEOC from deposing Mr. Hanks.

## The Parties' Attempt to Resolve the Matter

On or about November 30, 2006, counsel for WGI notified the EEOC that WGI objected to producing Mr. Hanks for his deposition. The parties were unable to resolve the matter.

## Factual Background

This case arises from the Sithe Mystic construction site in Everett, Massachusetts at which WGI was the general contractor. The allegations of the EEOC and six individual employees, who have filed complaints as Plaintiff-Intervenors, relate to their employment at the construction site from approximately 2001 through 2002.[1] WGI employed an on-site Equal Employment Opportunity Representative, Warren Anderson, who worked at the Sithe Mystic

---

[1] One of the six Plaintiff-Intervenors was employed into January, 2003.

site during the entire relevant time period.[2] Mr. Anderson has undergone two full days of deposition questioning by the EEOC and Plaintiff-Intervenor counsel. He is scheduled to return to Boston from Denver, Colorado for yet a third full day of deposition testimony on Wednesday, January 10, 2007. Mr. Anderson has been asked, and has answered, questions relating to WGI's EEO policies and program at the site, as well as WGI's handling of complaints about offensive graffiti and other allegations in this case pertaining to racial harassment and/or discrimination at the Sithe Mystic site. In addition, on Friday, December 1, WGI's Corporate EEO Officer, Michael McDaniel, was deposed for a full day. Mr. McDaniel, who flew to Boston from Birmingham, Alabama, testified at length about WGI's Corporate EEO program, his responsibility as the top ranking EEO Officer, and his involvement with the instant case and the Company's response to complaints that arose from the job site. The testimony of Mr. McDaniel and Mr. Anderson has clearly established when WGI learned of various allegations, as well as how the Company responded and what steps the Company took thereafter.

WGI has also produced for depositions several individuals who held supervisory positions at the construction site. These individuals include: Charles Belangia and Ron Bennett (Boilermaker Superintendents to whom four of the Plaintiff-Intervenors' foremen and general foreman reported); Bob Connelly (Area Manager – top ranking WGI management representative on the night shift); Bob Blount (Civil Superintendent); Walter Laptew (Electrical Manager); and John Tull (Electrical Superintendent).

The only evidence linking Mr. Hanks to this case is the testimony of Mr. McDaniel and the corporate EEO policy, which contains Mr. Hanks' signature and was produced by WGI. Mr. McDaniel's testimony regarding Mr. Hanks was limited to the fact that Mr. Hanks would receive from WGI's Senior Vice President of Human Services a weekly status report containing brief

---

[2] Mr. Anderson is also a Labor Relations Director for WGI.

descriptions of pending EEOC charges. (McDaniel Tr., pp.74-76)[3] Mr. Hanks never visited the site, was not involved with the Company's response to alleged complaints of harassment or discrimination at the Sithe Mystic site, made no decisions related to such complaints or proposed responses to same, has no knowledge of the Plaintiff-Intervenors, their work performance, qualifications, complaints, reasons for discipline or termination, or any other relevant facts relating to the Plaintiff-Intervenors. (Affidavit of Stephen G. Hanks, ¶¶ 4-7) In addition, WGI has not been served with any interrogatories or document requests seeking information or knowledge that Mr. Hanks may have. Mr. Hanks has likewise not been served with any such discovery requests. Further, Plaintiff EEOC and Plaintiff-Intevenors have not noticed the depositions of any other individuals who may be able to provide relevant information.

## ARGUMENT

I. **WGI IS ENTITLED TO A PROTECTIVE ORDER TO PRECLUDE THE EEOC FROM DEPOSING MR. HANKS BECAUSE HE DOES NOT POSSESS UNIQUE OR SUPERIOR KNOWLEDGE REGARDING THE CIRCUMSTANCES OF THE EEOC CLAIMS**

Courts recognize that where, as here, a plaintiff serves a notice to depose a high-level corporate executive in a litigation matter, the plaintiff's deposition request must be carefully scrutinized because such depositions raise a tremendous potential for discovery abuse and harassment. See Mulvey v. Chrysler Corp., 106 F.R.D. 364, 366 (D. R.I. 1985) (recognizing vulnerability of high-level corporate executives to unwarranted discovery); See also Liberty Mutual Ins. Co. v. Superior Court, 13 Cal. Rptr.2d 363, 366, 10 Cal. App. 4th 1282 (Cal Ct. App. 1992). Due to the enormous inconvenience and hardships that such depositions engender, depositions of high-level corporate executives are generally not allowed where the information sought can be obtained through less intrusive methods, such as interrogatories, document requests, depositions of other persons, or the deposition of a designated corporate spokesperson.

---

[3] Relevant portions of Mr. McDaniel's deposition transcript are attached as Exhibit A to the Affidavit of Stephen T. Paterniti

See Patterson v. Avery Dennison Corp., 281 F.3d 676, 681-82 (7th Cir. 2002) (holding in Title VII gender discrimination claim that trial court properly refused to compel deposition of senior corporate vice president where plaintiff had already deposed a corporate spokesperson, and two additional employees, and also could have served interrogatories on the vice president); Baine v. General Motors Corp., 141 F.R.D. 332, 334-35 (M.D. Ala. 1991). Accordingly, in order to depose Mr. Hanks, the EEOC must demonstrate to the Court that the proposed deponent has unique or superior knowledge about the relevant issues in the litigation. Baine, 141 F.R.D. at 334-35 (stating that plaintiff had not demonstrated that a noticed executive "has any superior or unique personal knowledge" of the subject matter of the pending civil action); Cardenas v. The Prudential Insurance Co., 2003 U.S. Dist. LEXIS 9510 at *2-3 (D. Minn. 2003) (holding in employment discrimination claim that plaintff's motion to compel the depositions of four senior company executives was properly denied, and recognizing principle that "courts frequently restrict efforts to depose senior executives where the party seeking the deposition can obtain the same information through a less intrusive means, or where the party has not established that the executive has some unique knowledge pertinent to the issues in the case."); In re Alcatel USA , Inc., f/k/a DSC Communication Inc., Relator, 11 S.W.3d 173, 179 (Texas 1999) (in order to demonstrate that a senior executive possesses unique or superior knowledge warranting his deposition, "there must be a showing beyond mere relevance, such as evidence that a high-level executive is the only person with the personal knowledge of the information sought or that the executive arguably possesses relevant knowledge greater in quality or quantity than other available sources."); Liberty Mutual Ins. Co., 13 Cal. Rptr. 2d at 366-67.

Here, Mr. Hanks has no unique or superior knowledge of the subject matter of this case. He has no personal knowledge of the alleged discriminatory conduct. (Hanks Aff., ¶ 4) He was employed in Boise, Idaho at WGI's headquarters throughout the relevant time period, and never visited the facility which is the subject of the EEOC's complaint. (Hanks Aff., ¶ 3). Mr. Hanks'

only relation to the alleged events was his passive receipt of weekly reports from Senior Vice President of Human Resources Larry Myers summarizing pending EEOC charges against WGI. (Hanks Aff., ¶ 5). Mr. Hanks never directly communicated with Corporate EEO Officer Mike McDaniel or any on-site personnel at any point regarding the charges of discrimination or WGI's response to them. (Hanks Aff., ¶ 6); (McDaniel Tr., ¶¶ 31-33, 76-77).

Mr. Hanks is President and CEO of a multi-national company with thousands of employees. (Hanks Aff., ¶ 1) He had no involvement whatsoever in employment decisions at issue in this case. He did not personally investigate the claims at issue in this case, and did not make any decisions regarding remedial measures. (Hanks Aff., ¶¶ 3-7) Under these circumstances, he cannot be seen to provide any "unique" or "superior" knowledge about this case. See, Harris v. Computer Associates Intern., Inc., 204 F.R.D. 44 (E.D. N.Y. 2001)(precluding deposition of a CEO in a multi-national corporation with thousands of employees because the CEO had no involvement in plaintiff's supervision or work conditions and the matters about which plaintiff sought to question the CEO involved information that plaintiff had already obtained from the deposition of his own supervisor).[4]

In addition, the EEOC and Plaintiff-Intervenors have deposed Mr. McDaniel about WGI's EEO program, WGI's EEO policies and WGI's response to the complaints at issue in this case. WGI's on-site EEO Representative, Warren Anderson, has also undergone two full days of inquiry in deposition, with a third day scheduled in January. Mr. Anderson and Mr. McDaniel have testified about when WGI received complaints, WGI's handling of complaints, and actions

---

[4] The Court in Harris made the following observation, which is equally applicable to the present motion:

> "[The CEO] only heard complaints about plaintiff's job performance second hand and therefore lacks personal knowledge of the facts that give rise to the disputed issues in this action. Nor was he involved in the personnel decisions that are claimed by plaintiff to constitute adverse employment actions by defendants."

204 F.R.D. at 46-47.

6

taken to address these complaints. On these issues, Mr. Hanks has no knowledge superior to, or in addition to, either of these two witnesses. (Hanks Aff., ¶¶ 3-7)

Case law addressing similar circumstances is instructive. In Patterson, a Title VII plaintiff took the deposition of the Human Resources Director ("HR Director") (who had been designated as a Rule 30(b)(6) corporate spokesperson), and also deposed two additional employees who supervised or worked directly with the plaintiff. Patterson, 281 F.3d at 681. The plaintiff also sought to compel the deposition of the company's corporate vice president and controller, because he had sent an email message to the HR Director, stating that other employees had come to him about the plaintiff's plight, and the vice president further asked the HR Director to "take a second look at what is going on here." Id. at 679. The company argued that the vice president should not be deposed because he neither participated in nor had first-hand knowledge of the circumstances surrounding the plaintiff's termination. Id.

The trial court denied the plaintiff's motion to compel the vice president's deposition, and this decision was affirmed by the Seventh Circuit on appeal. In so holding, the Court found that taking the vice president's deposition would be quite costly and burdensome. Id. at 681-82. The Court observed that the plaintiff could have utilized a more convenient and less expensive discovery method:

> "we note that Miller is a high-ranking executive in a multinational corporation, who worked more than 1,000 miles away from the facility where [plaintiff] was employed. The requested deposition of Miller would have been a quite costly and burdensome means for determining whether he had information bearing on [plaintiff's] termination. Indeed, we observe that [plaintiff] failed to submit any interrogatories to Miller, although she had the right and the opportunity to do so, Fed. R. Civ. P. 33 . . . .[plaintiff's] failure to take advantage of this inexpensive, convenient method of discovery, i.e., interrogatories, casts serious doubt over her claim that Miller possessed information that was more than marginally relevant to her civil action."

Id.

Similarly, in this case the EEOC has already deposed multiple WGI management witnesses, including the highest ranking corporate EEO representative. Additionally, Mr. Hanks works at WGI's corporate headquarters, which is located more than 1,000 miles away from the facility at which the alleged discrimination took place. His only relation to the underlying events is his passive reception of summary reports with no significant detail whatsoever about the Plaintiff-Intervenors' charges. This is even more marginal than the executive in Patterson who had sent an email related to the plaintiff's claim. Id. at 679. The cost and burden of the deposition for Mr. Hanks would be significant, as was the deposition in Patterson. Finally, the EEOC has failed to take advantage of a more inexpensive and convenient method of discovery, such as interrogatories. For all these reasons, the Court should issue a protective order prohibiting Mr. Hanks' deposition. Id.

A similar result was reached by the Tenth Circuit in Thomas, where a plaintiff brought an age discrimination claim and sought to depose the Chairman of the Company's Board of Directors. Thomas, 48 F.3d at 481-83. In affirming the district court's issuance of a protective order, the Court in Thomas noted that the Chairman lacked personal knowledge of the plaintiff's employment, was unaware of the plaintiff's age or performance evaluations, and also observed that the plaintiff had received an opportunity during discovery to depose her immediate supervisors who conducted the relevant performance evaluations. Id. at 483. While the plaintiff argued that the Chairman's deposition was "critical" because he had allegedly authored a company policy designed to discriminate against older employees, the Court stated that the plaintiff "made no attempt to demonstrate that the information she seeks to obtain from [the Chairman] could not be gathered from other [Company] personnel, for whom a deposition might have been less burdensome." Id. at 483.

Likewise, the EEOC had the opportunity to gather information regarding WGI's EEO policy during the deposition and phone interview of Michael McDaniel, WGI's EEO Officer.

8

Additional information was gathered from the on site EEO representative, Warren Anderson, during his deposition. Although Mr. Hanks is the signatory on WGI's EEO policy, his testimony will add no additional relevant information regarding its content. See Id. The EEOC has not alleged that WGI's EEO policy in any way contributed or facilitated the alleged discrimination against WGI's employees at the Sithe Mystic construction site. Accordingly, WGI's EEO policy is not even a material issue in this civil action.

Notably, Mr. Hanks does not suffer from a mere failure to recollect relevant events. In Mulvey, the court did not accept an affidavit from Chrysler's Chairman, Lee Iacocca, in which he professed his ignorance of the information sought by plaintiffs, because Mr. Iacocca had made certain damaging statements in his published biography relevant to Chrysler's liability that contradicted his expressed ignorance. In contrast, the EEOC has no evidence to rebut Mr. Hanks' stated ignorance of relevant events. Mr. Hanks was located in Idaho and never visited the Sithe Mystic site. In any event, in light of the danger of unwarranted harassment and abuse that could easily be imposed upon Mr. Iacocca, even the Court in Mulvey required the plaintiff to utilize interrogatories before deposing Mr. Iacocca. 106 F.R.D. at 365, 366.

Based upon the above facts and case law, the EEOC has failed to establish any legitimate basis for compelling Mr. Hanks to be deposed, where, as here, Mr. Hanks has no unique, superior or even significant knowledge of the issues involved in this litigation, and played no substantive role in the alleged discriminatory practices. Further, even if Mr. Hanks possesses some marginally relevant information – which is dubious in light of the deposition testimony Plaintiff has elicited from other Company officials and Mr. Hanks' affidavit – this additional deposition should be denied because any such information could be gleaned through more efficient, convenient, and less disruptive discovery devices, such as written interrogatories. See Mulvey, 106 F.R.D. at 366.

## CONCLUSION

For all the foregoing reasons, Defendant's Motion for a Protective Order should be allowed.

## REQUEST FOR ORAL ARGUMENT

Because of the importance of the issues raised by this motion, Defendant's request a hearing pursuant to 7.1(D)

Respectfully submitted,

WASHINGTON GROUP INTERNATIONAL, INC.,

By its attorneys,

/s/Stephen T. Paterniti
Andrew C. Pickett, BBO #549872
Stephen T. Paterniti, BBO #564860
Jackson Lewis LLP
75 Park Plaza
Boston, MA 02116
(617) 367-0025

Dated: December 29, 2006

## CERTIFICATE OF SERVICE

This is to certify that this document was filed through the ECF System and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies to those indicated as non-registered participants.

\s\Stephen T. Paterniti
Jackson Lewis LLP