UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, <br><br> Plaintiff, <br><br> JOHN BALDWIN, LEONARD BELL, JOHANNES KAINDOH AND WAYNE HENDERSON, JOE L. WILLIS and GODWIN ENAGBARE <br><br> Intervenor-Plaintiffs <br><br> -against- <br><br> WASHINGTON GROUP INTERNATIONAL, INC. <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )  Civil Action No. 04-12097-GAO |

**PLAINTIFF, EEOC'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

Pursuant to Fed. R. Civ. P. 26 (c) and L.R. 7.1 (b)(2), Plaintiff, the Equal Employment Opportunity Commission ("the EEOC") files this Memorandum in Opposition to Defendant Washington Group International's ("WGI") Motion and Memorandum in Support of Protective Order by which WGI seeks to prohibit the EEOC from deposing Stephen Hanks, WGI's President and Chief Executive Officer. The EEOC respectfully requests that this Court deny WGI's Motion for Protective Order and allow the deposition to go forward as it is the only efficient and effective means of obtaining the relevant information required in this matter.

## **INTRODUCTION**

The EEOC filed this class lawsuit against WGI on September 30, 2004, alleging that WGI engaged in race discrimination against a class of its African American employees working at the WGI managed construction site of the Sithe Mystic Power Plant in Everett, Massachusetts ("the Site"). *See* General Telephone Co. v. EEOC, 100 S. Ct. 1698, 446 U.S. 318 (1980) (holding that the EEOC is not bound by Rule 23 in bringing class claims because, "[w]hen the EEOC acts, albeit at the behest of and for the benefit of specific individuals, it acts also to vindicate the public interest in preventing employment discrimination."). The EEOC's lawsuit generally alleges that the race discrimination to which WGI subjected its African American employees included a hostile work environment on the basis of race, retaliation and discriminatory discharge.

These claims of race discrimination were originally brought to the EEOC by six African American WGI employees who worked at the Site and who uniformly described a hostile work environment on the basis of race. The allegations of these original six Charging Parties (also now each a Plaintiff-Intervenor in this matter) were thereafter supported by an additional fifteen similarly situated African American individuals identified by the EEOC during the discovery period who also described a workplace where racially offensive terms such as "nigger" were used by co-workers and supervisors towards and with reference to African Americans. The employees also described a workplace that permitted racially offensive and racially threatening graffiti to be displayed in the bathrooms and in other places throughout the Site which included words and images such as, "nigger," "monkey," drawings of nooses, "nigger go back to Africa," "jigaboo," "KKK," "nigger go home," "die niggers die," "kill all niggers," "KKK will rise again," "God bless the KKK," pictures of KKK hooded individuals surrounding a list of names,

derogatory pictures of blacks with their first names, and "coon" - with minimal, if any, response from WGI management despite complaints. Although the original six Charging Parties and several of the other similarly situated individuals also allege WGI engaged in retaliation against African Americans who complained about the discrimination in the workplace, and in discriminatory discharge of African Americans employed on the Site because of their race and/or because of their complaints of retaliation, the most unique and perhaps the most troubling part of this case concerns the racist graffiti that was present in the workplace and WGI's indifference and minimal response thereto.[1]

In this regard, during the discovery of this matter, the EEOC has sought information about knowledge that WGI had about the hostile work environment that existed at the Site, and about what, if anything, WGI did to address the hostile work environment (both prospectively and retrospectively). Further, and for purposes of assessing the punitive value of the case, in addition to assessing what injunctive measures would be necessary to prevent this type of discrimination in the future,[2] the EEOC has also sought to identify the resources that WGI has put into addressing discrimination in the workplace – including but not limited to policies and procedures, personnel, problem solving efforts, and the importance that the Company places on combating workplace discrimination.

## PROCEDURAL BACKGROUND

The litigation of this case has been time consuming given the number of parties involved and the coordination of the multiple schedules required for completing litigation requirements.

---

[1] The graffiti at the Site was very similar if not more severe than that alleged in EEOC v. Pipe Fitters Assoc. Local Union 597, 2002 WL 976618, attached as Exhibit A, which prompted the court to note that, "[o]nly a visitor from another planet would fail to understand the ugliness of what was written and drawn on those walls." EEOC v. Pipe Fitters Assoc. Local Union 597, 2002 WL 976618, *7 (March 8, 2002, N.D. Ill.), rev'd on other grounds, EEOC v. Pipe Fitters Assoc. Local Union 597, 334 F.3d 656 (7th Cir. 2003).

[2] Injunctive and punitive relief is specifically requested in the EEOC Complaint.

The parties also engaged in a full day mediation in an attempt to resolve this case on October 31, 2006, which was unsuccessful. Nonetheless, and notwithstanding Defendant's current motion, the parties have worked collaboratively to complete the depositions of all six Plaintiff-Intervenors, three of the fifteen similarly situated individuals identified as class members by the EEOC to date, and nine depositions of WGI management employees who had direct involvement with the Site and/or with many of the class members. Many of these depositions have required both plaintiff and defense witnesses to travel. However, the EEOC has agreed to depose many of the WGI management witnesses (many taking less than 3 hours) *via* videoconference at its own expense. The use of videoconferencing where the depositions are expected to be shorter in length has conserved the resources of all involved parties. The EEOC has also made videoconferencing technology at its various field offices available for WGI when necessary, at no cost to WGI.

Of the nine WGI employees deposed, the EEOC has taken a three day deposition of Warren Anderson, WGI's Labor Relations Director. Despite WGI's size, Mr. Anderson is one of two labor relations managers and is directly responsible for any and all labor relations matters for WGI's approximately 20,000 US employees.[3] Mr. Anderson was assigned to the Site in both his capacity as a Labor Relations Director *and* as the designated Site EEO Officer. In his capacity as EEO Officer, Mr. Anderson was directly involved with responding to and in some cases involved in dealing directly with the complaints of discrimination made by various EEOC class members. Mr. Anderson also took copious daily notes during his assignment to the Site, which required the last day of his deposition to review. The lengthy Anderson deposition was not opposed by WGI

---

[3] *See* Anderson Depo. Vol. I, 28:24-29:2 (Anderson held title of labor relations director since 1998); 35:22-36:23 (Anderson reports to Ismet Cakrane, Vice President of Labor Relations; Cakrane reports to the Office of the Chairman, Hanks); 39:23-40:20 (Anderson and Cakrane are the only two labor relations managers at WGI); 56:19-57:3 (Anderson is responsible for labor relations for WGI's approximately 20,000 US employee workforce). Relevant pages of the Anderson Depo. Vol. I cited herein are attached as <u>Exhibit B</u>.

because ostensibly it understood the Mr. Anderson's personal involvement in this litigation was extensive. The EEOC also took a half day deposition of WGI's sole Corporate EEO Officer, D. Michael McDaniel, who, despite his own testimony that the number of EEO charges that arose from the Site was "on the high side," he admitted he never visited the Site.[4]

In addition to depositions, all parties have exchanged two sets of written discovery, and the EEOC has nearly exhausted its allotted number of interrogatories under Fed. R. Civ. 33.[5]

## THE EEOC'S NOTICE OF STEPHEN HANKS FOR DEPOSITION

### *The Parties' discussions regarding the Hanks' Deposition*

On November 21, 2006, the EEOC noticed the deposition of Stephen Hanks for December 22, 2006. See Hanks Deposition Notice, Exhibit D. On or about November 30, 2006, counsel for WGI objected to producing Mr. Hanks for the noticed deposition during a telephone conversation with the undersigned. On December 5, 2006, counsel for WGI and the undersigned spoke over the telephone about the EEOC's request to depose Mr. Hanks in more substance. In a good faith attempt to encourage WGI's agreement to Mr. Hanks' deposition, the undersigned advised WGI counsel of the areas of inquiry that would be made of Mr. Hanks during his deposition and specifically noted that given the limited areas of inquiry, the deposition would likely not exceed four hours. The undersigned also specifically advised WGI counsel that it was not calling Mr. Hanks as a 30(b)(6) witness. Although not discussed, the undersigned had contemplated that given Mr. Hanks' location and the brevity of the deposition, that the deposition would either take place at a location convenient for Mr. Hanks in Boise, Idaho, or that the deposition could also take place by videoconference at a location convenient to Mr. Hanks,

---

[4] See McDaniel Depo. 61:17-62:5 (complaints at Site were on the high side); 65:19-21 (never visited the Site). The relevant pages of the McDaniel Deposition cited herein are attached as Exhibit C.
[5] The EEOC has ten remaining interrogatories available for the rest of the discovery period.

5

as had been done in so many of the previous WGI witness' depositions – at the EEOC's expense. WGI has now sought the instant protective order.

After litigating this case for over two years and remaining actively involved in obtaining information necessary to both move forward in the litigation and also evaluate the case for settlement, the EEOC has only recently sought to depose WGI Chief Executive Officer Stephen Hanks.[6] Thus, the EEOC's notice of Mr. Hanks' deposition is not a traditional "Apex" deposition whereby the EEOC has attempted to commence its discovery by going right to the top of WGI without having obtained information through less intrusive means or through other more knowledgeable individuals. *See e.g. and compare*, Thomas v. IBM, 48 F.3d 478, 483 (10th Cir. 1995)(Court denying plaintiff's request for deposition of IBM Chairman when she had not taken the deposition of any other IBM personnel). The EEOC's properly noticed deposition of Mr. Hanks was not requested to annoy, embarrass or oppress Mr. Hanks or WGI, or to cause him or WGI any undue burden or expense. Instead, this deposition was noticed to allow the EEOC, in this very important and serious race discrimination case, to obtain information it can only obtain from Mr. Hanks.

As is described in more detail below, this relevant information includes a general understanding his leadership, if any, on issues of equal employment opportunity in the workplace, and about what decisions, if any, he has made or chosen not to make relative to the funding of positions and measures within the Company geared towards addressing and preventing workplace discrimination. The relevant information sought also includes the EEOC's ability to test Mr. Hanks' recollection about his knowledge about facts relevant to the instant

---

[6] It should be noted, however, that the EEOC identified Mr. Hanks in its initial disclosures in early 2005 as an individual it believed was likely to have information about the discrimination alleged in the EEOC Complaint, the existence and/or lack of WGI policies and procedures regarding discrimination in the workplace, and other relevant EEO and Company matters.

6

litigation. As the information sought from Mr. Hanks is not only relevant but also reasonably calculated to lead to the discovery of admissible evidence, it is therefore proper under Fed. R. Civ. P. 26 and should be permitted.

**ARGUMENT: THE EEOC SHOULD BE PERMITTED TO TAKE THE DEPOSITION OF STEPHEN HANKS GIVEN THAT THE HANKS HAS RELEVANT AND NECESSARY INFORMATION AND WGI HAS FAILED TO SHOW GOOD CAUSE OR HARDSHIP JUSTIFYING THE ENTRY OF A PROTECTIVE ORDER**

*The EEOC's Notice of Hanks' Deposition is Proper*

As was described to WGI counsel prior to the filing of the instant motion, the EEOC seeks to depose Stephen Hanks for purposes of generally understanding his leadership,[7] if any, on issues of equal employment opportunity in the workplace, and about what decisions, if any, he has made or chosen not to make relative to the funding of positions and measures within the Company geared towards addressing and preventing workplace discrimination. Because this inquiry is central to the EEOC's evaluation of injunctive relief sought in this case and its evaluation of the punitive value of this case – particularly where the current impression is that the Company's EEO effectiveness is woefully deficient – this line of inquiry directed at Mr. Hanks is not only relevant but crucial to the EEOC's prosecution of this case. *See* EEOC v. Wal-Mart, 187 F.3d 1241, 1248-49 (10th Cir. 1999)(noting that the extent to which an employer has adopted anti-discrimination policies and educated employees on EEO is relevant for punitive damages). *See also generally* Kolstad v. American Dental Association, 527 U.S. 526 (1999). (discussing punitive damages where the employer engages in discriminatory practices with reckless indifference to the federally protected rights of an aggrieved individual and addressing

---

[7] Mr. Hanks is the signatory on the annually issued EEO policy at WGI, attached as Exhibit E. Particularly because Mr. McDaniel alluded in his deposition that Mr. Hanks does not actually sign the policy but that the person with the authority to affix Mr. Hanks' signature on the policy includes Hanks' signature, Mr. Hanks' knowledge, feelings and expectations about this policy put out under his signature is relevant to this case. *See* McDaniel Depo. 87:15-89:3 (discussing the annual reaffirmation of the WGI EEO policy), Exhibit B.

7

the relevance of the employer's good faith efforts to comply with Title VII in that analysis). *See also* McDaniel Depo. 89:4-21, Exhibit B. (discussing in the context of Mr. Hanks' feelings on EEO issues that budgetary concerns regarding employee training go "to the top" [Hanks].) Mr. Hanks' Affidavit attached to WGI's Motion and Memorandum in Support is silent on the aforementioned matters, which are relevant to this case.

In addition to the general inquiry related above, the EEOC specifically advised WGI counsel that it intended to ask Mr. Hanks about his review, and responses, if any, to weekly human resources reports that advised him of the numerous charges of discrimination arising at the Site. It was established in the deposition of Mr. McDaniel that Mr. Hanks is made aware of the EEO matters in the field through weekly reports such as that attached as Exhibit F.[8] In fact, in an e-mail from Mr. McDaniel to Mr. Anderson, it appears EEO issues are in fact "being watch[ed] from the top." *See* E-mail from McDaniel to Anderson dated September 9, 2002 attached as Exhibit G. These same weekly reports are believed to have also made Mr. Hanks aware not only that administrative charges were filed against WGI at the Site but that the EEOC filed suit in this case against WGI.[9]

As the federal agency charged with litigating employment discrimination cases in the public interest, the EEOC should be able to depose Mr. Hanks not only to test his recollection regarding knowledge he received about the racially hostile environment and what reaction he had or what action he took, if any, in response to it, but also to inquire about his leadership on EEO

---

[8] *See* McDaniel Depo. 73:14-77:11 (discussing the weekly human resources report that goes to Mr. Hanks).
[9] *See* McDaniel Depo. 90:1-14. That the EEOC filed suit against WGI should have caught Mr. Hanks' attention given that EEOC litigation is not something typical for U.S. companies. *See* EEOC v. Wafflehouse, 534 US 279, 290, n.7 (2002)(noting that the EEOC is responsible for less than two percent of all employment discrimination lawsuits filed in Federal Court and brings suit in less than five percent of all charges in which if finds reasonable cause for discrimination.)

matters and financial decisions made for funding the prevention and handling of EEO matters in the field.[10]

### *The Standard for a Protective Order in this Matter*

In order to be granted a protective order in this matter, WGI must demonstrate particular and specific facts to establish good cause for the order. *See* Prozina Shipping Co., Ltd. v. Thirty-Four Automobiles, 179 F.R.D. 41, 48 (D. Mass. 1998) *citing* Anderson v. Cryovac, Inc., 805 F.2d 1, 7 (1st Cir. 1986); Church of Scientology of Boston v. IRS, 138 F.R.D. 9, 11 (D. Mass 1990) *citing* Public Citizen v. Liggett Group, Inc., 858 F.2d 775, 778 (1st Cir. 1988), *cert. denied*, 488 U.S. 1030, 109 S. Ct. 838 (1989). Furthermore, the order should only issue if after balancing the harm to WGI against the relevance of and the necessity of the information, it is shown that WGI will suffer hardship if the discovery proceeds in the absence of the protective order. *See* Fed. R. Civ. P. 26 (c); Multi-Core, Inc. v. Southern Water Treatment Co., 139 F.R.D. 262, 263-4, (D. Mass. 1991) *citing* 8 C. Wright & A. Miller, *Federal Practice and Procedure §2043 (1970).* "Relevancy is to be broadly construed at the discovery stage of litigation and a request for discovery should be considered relevant if there is *any* possibility that the information sought may be relevant to the subject matter of the action." Church of Scientology, at 10, *citing* Gagne v. Reddy, 104 F.R.D. 454, 456 (D. Mass. 1984). Also, where Courts have held that prohibiting the taking of a deposition is an extraordinary measure, "the moving party has a heavy burden of showing 'extraordinary circumstances' based on 'specific facts' that would justify such an order." *See* Prozina, at 48 ; Dunkin' Donuts, Inc. v. Mandorico, Inc., 181 F.R.D. 208,

---

[10] The EEOC was surprised that WGI opposed its notice of Mr. Hanks' deposition, particularly where Mr. Hanks appeared to have complied with a request for an audience with him made by the District Director of the Office of Federal Contract Compliance Programs who visited the Boise facility in the course of an OFCCP audit. *See* McDaniel Depo. 31:18-32:13, Exhibit B.

210 (D. PR 1998) ("in general, protective orders pursuant to Fed. R. Civ. 26(c) totally prohibiting a deposition are rarely granted absent extraordinary circumstances.").

In its Memorandum in Support WGI cites to state Court decisions that have adopted the "Apex doctrine" which requires a party seeking to depose a high level corporate official to show that (1) the executive has unique or special knowledge of the facts at issue and (2) the seeking party has exhausted other less burdensome avenues for obtaining the information sought. See Liberty Mutual Ins. Co., v. Superior Court, 13 Cal. Rptr.2d 363, 366, 10 Cal. App. 4th 1282 (Cal Ct. App. 1992) and In re Alcatel USA, Inc. f/k/a DSC Communication Inc., Relator, 11 S. W.3d 173, 179 (Texas 1999). However, no federal court has required that this test be met before an upper level official can be deposed. See Van Den Eng v. The Coleman Company, Inc., 2005 U.S. Dist. LEXIS 40720, *7 (D. Kan., October 21, 2005), attached as Exhibit H.

Federal courts – such as those cited in WGI's Memorandum in Support - have simply taken into consideration the Apex doctrine requirements as factors to consider when analyzing whether to permit the deposition of an upper level executive, in addition to other factors such as, "the executive's knowledge of the issues in the case, the availability of direct supervisors and lower-level managers for deposition, and scheduling conflicts." Id., at *9. No First Circuit case on point was found on the standard for analyzing the deposition of an upper level executive. Only two district court cases were located within the First Circuit contemplating the deposition of upper level executives – both involved executives of much larger companies and neither prevented outright the deposition of the individual noticed.

In Mulvey v. Chrysler Corporation, et. al., 106 F.R.D. 364 (D. RI 1985), the Court considered a protective order motion filed by Defendant seeking to prevent the deposition of Chrysler CEO Lee Iaccoca. The Court specifically noted that if Lee Iacocca, the CEO of

Chrysler had any information reasonably calculated to lead to the discovery of admissible evidence, that he was required to reveal the same. Id., at 366. In Mulvey, the Court did not prevent the deposition of Mr. Iaccoca; it simply required plaintiff to serve interrogatories on Mr. Iacocca without prejudice to a subsequent oral deposition if the answers to the interrogatories warranted the deposition. Id.

In Travelers Rental Co., Inc. v. Ford Motor Co., 116 F.R.D. 140 (D. Mass. 1987), the Court granted plaintiff's request to depose four upper level Ford executives after plaintiff deposed subordinates with supposed equal or greater knowledge and were still able to show the need for the executive depositions. The Court notably stated that even in the context of the executives' signed affidavits that they knew nothing and/or recalled nothing, that the plaintiff was entitled to a deposition to "test" the individual's claimed lack of recollection noting that, "the ability to "test" is even more important in the case of a claimed lack of recollection than lack of knowledge, since recollection can frequently be refreshed during an examination." Id., at 143. The Court also later stated that in the context of an alleged lack of recollection, "forms of discovery other than a deposition are ill-suited to probe a failure of recollection and to effectuate a refreshing of failed recollection." Id., at 144. The Court further noted that, "the lack of knowledge claimed by these high executives may, in and of itself, be relevant evidence. " Id. *See* Affidavit of Stephen Hanks, attached to WGI's Memorandum in Support, ¶5 (setting forth a lack of recollection regarding his relation to the allegations in the litigation of this matter).

### *WGI's Motion should be Denied because it has not shown Good Cause*

WGI's motion for protective order should be denied because WGI has not shown good cause to prevent the Hanks deposition. Other than asserting that Mr. Hanks is the President and CEO of WGI, a global company, it has not alleged that Mr. Hanks has any scheduling conflicts

11

that would prevent him from participating in the deposition noticed by the EEOC. Furthermore, the EEOC has specifically requested a limited deposition of Mr. Hanks that is unlikely to exceed four hours. On November 6, 2006, Mr. Hanks spoke at 11 am at the Brigham Young University in Utah on "Global Competitiveness" before a group of students; preparing for this speaking engagement, attending this engagement and traveling to and from this engagement from his home office in Boise undoubtedly took more time than the EEOC deposition is likely to take. *See* Hanks Speaking Engagement Flyer, Exhibit I. With proper planning and scheduling flexibility, which the EEOC has always provided to WGI throughout this litigation, WGI has not established why Mr. Hanks should not be able to attend a short deposition with little difficulty.

In addition, the EEOC is seeking to depose Mr. Hanks after having exhausted depositions of lower-level employees. These employees have identified Mr. Hanks as an individual with knowledge about how Company EEO resources are funded, and have identified Mr. Hanks as an individual who received regular updates about the EEO matters that occurred in the field. *See* McDaniel Depo., *infra* at n. 8. Also, exhibits F and G produced thus far by WGI in response to the EEOC's written discovery also support that Mr. Hanks may have more knowledge than he recalls and has set forth in his Affidavit.[11] As Mr. Hanks, by his own admission in his Affidavit, does not recall whether this was the only communication he received about the facts that led to the instant lawsuit, the EEOC should have the ability to test Mr. Hanks' recollection. *See* Van Den Eng v. The Coleman Company, Inc., *supra* at *12. ("As a general rule a party seeking discovery may test an asserted lack of knowledge."). *See also* Travelers Rental Co., Inc. v. Ford Motor Co., *supra* at 143. (same). Further, the fact that Mr. Hanks has also stated in his Affidavit that he has no personal knowledge of the alleged racially discriminatory conduct at the Site does

---

[11] The EEOC has recently made a subsequent request for supplementation to WGI given Mr. McDaniel's testimony that Mr. Hanks likely received notice of the EEOC lawsuit through the same weekly human resources report. *See supra* n. 9.

not preclude the taking of his deposition. *See* Van Den Eng v. The Coleman Company, Inc., *supra* at *12 *citing* Horsewood v. Kids "R" Us, 1998 U.S. Dist. LEXIS 13108, *6 (denying a protective order for an Apex Official where the deposition was reasonably calculated to lead to discoverable evidence, despite the Apex Official's claim that he lacked any relevant personal knowledge).[12]

Finally, for practical reasons, the EEOC should be permitted to depose Mr. Hanks. The discovery deadline in this case is April 16, 2007. Having to serve written discovery on Mr. Hanks prior to taking his deposition, should the Court so decide, waiting thirty days or longer for a response (all other written discovery responses in this case from WGI have consistently been delayed) and thereafter having to likely burden the Court for another request to depose Mr. Hanks would undoubtedly be more costly in terms of time and costs than the limited deposition proposed by the EEOC. In fact, WGI's motion and the EEOC's opposition together have already taken much longer than the period of time foreseen for the deposition of Mr. Hanks. *See* Fed. R. Civ. P. 1 (the federal rules are to be construed to secure the just, speedy, and inexpensive determination of every action).

WGI has failed to show that good cause exists for its Motion for Protective Order in this matter, nor has it shown that it will endure any hardship in producing Mr. Hanks for deposition. Furthermore, even if the Court were to find that WGI established good cause for the entry of WGI's Protective Order in this case, the EEOC should not be completely prevented from taking Mr. Hanks' deposition given that it has already agreed to restrictions on the duration of the deposition and has indicated its flexibility on scheduling.

---

[12] Horsewood, attached as Exhibit J.

## CONCLUSION

For the foregoing reasons, the EEOC respectfully requests that the Court deny Defendant's Motion for Protective Order and allow the deposition of Stephen Hanks to proceed.

Dated: January 11, 2007

Respectfully submitted,

/s/ **Markus L. Penzel**
Senior Trial Attorney, BBO#642007
Equal Employment Opportunity Commission
Boston Area Office
JFK Federal Building, Room 475
Government Center
Boston, MA 02203-0506
Tel: (617) 565-3193
Fax: (617) 565-3196
markus.penzel@eeoc.gov

/s/ **R. Liliana Palacios-Baldwin**
Senior Trial Attorney
MA BBO 640786
Equal Employment Opportunity Commission
Boston Area Office
JFK Federal Building, Room 475
Government Center
Boston, MA 02203-0506
Tel: (617) 565-3188
Fax: (617) 565-3196
Rosa.Baldwin@eeoc.gov

## CERTIFICATE OF SERVICE

I, R. Liliana Palacios-Baldwin, hereby certify that on this 11th day of January, 2007, I electronically filed this document with the U.S. District Court of Massachusetts and caused a copy of the above document to be mailed, postage prepaid, to all the attorneys of record in the above captioned case:

/s/ **R. Liliana Palacios-Baldwin**