UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOCKET NUMBER: 04-12097GAO

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,
    Plaintiff,
and

JOHN BALDWIN, LEONARD BELL,
JOHANNES KAINDOH, WAYNE HENDERSON,
GODWIN ENAGBARE and JOE L. WILLIS,
    Intervenor Plaintiffs,

v.

WASHINGTON GROUP INTERNATIONAL, INC.,
RON BENNETT, MICHAEL FOGARTY, and
DENNIS WOODRUFF,
    Defendants.

## REPLY TO THE OPPOSITION OF PLAINTIFF EQUAL EMPLOYMENT OPPORTUNITY COMMISSION TO WASHINGTON GROUP INTERNATIONAL'S MOTION FOR PROTECTIVE ORDER

Washington Group International, Inc. ("WGI" or the "Company") files this reply to respond to certain issues raised by the Equal Employment Opportunity Commission ("EEOC") in opposition to WGI's motion for protective order to prevent the deposition of WGI's President, Stephen G. Hanks.[1]

Despite the fact that there is no evidence that Mr. Hanks played any role in this case or has any knowledge of any facts relevant to the claims made by Plaintiff EEOC and the Plaintiff-Intervenors, the EEOC nevertheless argues it is entitled to depose Mr. Hanks simply by virtue of

---

[1] While WGI will not use this reply to argue the substantive facts of the case, it should be noted that allegations such as the extent of graffiti, the duration of time that pieces of offensive graffiti existed, WGI's knowledge of the graffiti, the adequacy and effectiveness of WGI's efforts to combat graffiti, employees' failure to complain to WGI about alleged harassment and retaliation, and many other allegations in this case are hotly disputed.

the fact that he is WGI's President. If this fact alone is sufficient to require Mr. Hanks to be deposed, then he would be subject to unlimited depositions in virtually any lawsuit brought against WGI. As one District Court in the First Circuit has noted, "[Mr. Hanks] is a singularly unique and important individual who can be easily subjected to unwarranted harassment and abuse. He has a right to be protected and the courts have a duty to recognize his vulnerability." Mulvey, et al. v. Chrysler Corporation, et al., 106 F.R.D. 364 (D.R.I. 1985). It is for this reason that case law has developed safeguards for courts to consider to prevent such abuse, including a showing that the executive possesses unique or special knowledge of the facts at issue. (See, cases cited in WGI's Motion for Protective Order.)

In its defense, the EEOC does not argue that Mr. Hanks possesses any unique or special knowledge of the facts at issue. Instead, the EEOC argues that inquiries regarding Mr. Hanks' leadership on EEO issues and decisions he may have made regarding funding EEO initiatives within the Company are relevant to the issues of injunctive relief and punitive damages. However, the EEOC has offered no evidence or argument supported by any case law that, as WGI's President, Mr. Hanks has any unique or special knowledge relevant to punitive damages or injunctive relief that would entitle the EEOC to inconvenience him with a deposition.[2]

The relevant inquiry for punitive damages is whether WGI engaged in intentional discrimination at the Sythe Mystic construction site (the "Site"). Kolstad v. American Dental Association, 527 U.S. 526 (1999); 42 U.S.C. §1981. Mr. Hanks has no knowledge of the facts and did not make any decisions relevant to the claims in this case. Generalized inquiry into his "leadership on EEO issues" or decisions he may have made about funding corporate EEO initiatives, are entirely irrelevant to the question of whether intentional discrimination occurred

---

[2] While the EEOC argues that Mr. Hanks' deposition would take no longer than four hours, and thus is not a significant inconvenience, this ignores preparation time with counsel and travel by counsel to Boise, Idaho for both preparation and the deposition.

at the Site in 2002. Likewise, Mr. Hanks' leadership on EEO issues and past decisions he may have made about funding corporate EEO resources and initiatives are simply irrelevant to future injunctive relief. If WGI is found to be liable and injunctive relief is ordered, the EEOC has already received evidence of WGI's EEO policies, corporate EEO education and training, and EEO staffing. From this evidence, the EEOC is free to argue about any perceived deficiencies that may be addressed by affirmative relief.

The EEOC has already conducted significant discovery pertaining to WGI's EEO resources and initiatives, including staffing, training and education, by deposing WGI witnesses with far more knowledge than Mr. Hanks would have on these subjects, and through document production. As stated in more detail in WGI's motion for the protective order, the EEOC has deposed WGI's Corporate EEO Officer, Michael McDaniel, on WGI's EEO personnel, functions, policies, education and training provided to WGI employees. (See, McDaniel Dep., pp. 14, 40, 43-47, 51-57, 66-70, 84-92, 94-103, 107-110, 114-130, 134-144, 151, 162-178).[3] In addition, the EEOC has spent three full days deposing WGI's on-site EEO representative and Labor Relations Director, Warren Anderson, which included inquiries into WGI's EEO policies and training provided at the Site, as well as details about his function as the on-site EEO Representative. (Anderson Dep., Vol I, pp. 45-46, 48-53, 56-57, 87-116, 117-135, 147-159, 165-174, 177, 181-184, Vol. II pp. 4-6, 106-114, 121-122, 160-161, 170, 175-188, 199-202; Vol. III has not been received[4]) WGI has also produced numerous documents relevant to these issues, including various EEO policies, a September 16, 2002 memorandum regarding WGI's

---

[3] Relevant pages of Mr. McDaniel's deposition transcript are attached hereto as Exhibit A.
[4] Relevant portions of Mr. Anderson's deposition transcripts are attached hereto as Exhibit B. Inquiries on the third day of Mr. Anderson's deposition focused mainly on his extensive daily journal entries relating to the allegations in this case.

harassment policy, and minutes from toolbox meetings conducted at the Site on or about September 16, 2002, pertaining to WGI's policy on harassment and discrimination.

WGI employees, including Mr. McDaniel and Mr. Anderson, have also been deposed at length on the issue of WGI's good faith efforts to comply with Title VII as these efforts relate to the allegations raised in this case. See, Kolstad, 527 U.S. 526 (company's good faith efforts to comply with Title VII relevant to punitive damages inquiry). They have both testified at length about the measures taken to investigate the Plaintiff-Intervenors' allegations and to clean up graffiti at the Site. In addition, WGI has produced Mr. Anderson's voluminous daily journals from December 2001 through July 2003, which detail conversations and meetings with charging parties and others about their allegations, and steps taken to address the graffiti issue and investigate Plaintiff-Intervenors' allegations. WGI has also produced the notes of an investigation it conducted in November 2002 into allegations relevant to this case, as well as emails between Mr. McDaniel and Mr. Anderson relating to Plaintiff-Intervenors' charges. The EEOC provides no explanation as to why the deposition of WGI's President would provide any additional relevant information regarding WGI's policies, training and education on EEO, or its good faith efforts to comply with Title VII, that the EEOC has not already obtained from WGI through extensive discovery.

The EEOC's purported need to depose Mr. Hanks on a corporate EEO policy that contains his electronic signature, and past decisions regarding funding of EEO positions and initiatives at WGI, is perplexing in and of itself. WGI's policies, as well as EEO positions within the company and corporate EEO resources and initiatives, are matters of fact that stand on their own. The EEOC is well aware of these facts through discovery, including document production, a lengthy phone call with Mr. McDaniel, and his subsequent deposition. The EEOC is free to

argue that it believes that WGI's EEO policies may be deficient, or that WGI should have allocated funds for added EEO staff and initiatives within the Company. However, the details and reasons underlying the Company's decisions about these issues are simply irrelevant, and there is no reason that Mr. Hanks should have to be deposed about these decisions.

In a vain effort to tie Mr. Hanks to the actual allegations arising from the Site, the EEOC makes much of a summary weekly report sent to Mr. Hanks' office in early September 2002, which provided extremely brief summaries of all of WGI's pending EEO charges throughout the country. This report includes a brief paragraph noting that three individuals at the Site had filed charges alleging race discrimination. A brief paragraph in a summary report is a far cry from proof that Mr. Hanks knew any details about discrimination that was allegedly occurring at the Site.

The cases cited by the EEOC analyzing the issue of whether or not to issue a protective order prohibiting a senior executive's deposition are instructive. In Thomas v. International Business Machines, 48 F.3d 478, 483-484 (10th Cir. 1995), the Court of Appeals affirmed the District Court's issuance of a protective order prohibiting the deposition of IBM's Chairman in an age discrimination case. Although the Chairman had allegedly authored IBM's discrimination policy regarding discrimination against older employees, which the EEOC argues is a critical factor in this case, the Court still affirmed the issuance of a protective order. Among the factors supporting the protective order was an affidavit similar to Mr. Hanks' affidavit, in which the Chairman stated that he lacked any personal knowledge regarding the Plaintiff. Id.

Mulvey v. Chrysler Corp., 106 F.R.D. 364 (D.R.I. 1985), a personal injury action, also involved an affidavit submitted by the senior executive sought to be deposed, Chrysler's Chairman of the Board, Lee Iacocca. However, in that case Iacocca's affidavit claiming he had

no personal knowledge of the information the plaintiff sought was contradicted by statements in a book written by Iacocca. The Court decided that his contradictory statements warranted refining by further discovery. Id. at 366. This case is clearly distinguishable from the case at hand, because there is no evidence here contradicting Mr. Hanks' statement in his affidavit that he has no knowledge of the facts in this case. Further, although the Court in Mulvey did not issue a protective order, the Court did require the Plaintiff to resort to interrogatories before noticing a deposition of Iacocca.

The remaining cases cited in support of The EEOC's opposition are also clearly distinguishable on the basis that the intended deponents had personal involvement or knowledge relevant to the claims. See Travelers Rental Co. v. Ford Motor Co., 116 F.R.D. 140, 143 (D. Mass. 1987) (court denied Ford's motion to quash depositions of four Ford executives, including President and Executive Vice President, because executives were "personally involved in matters relevant to the case," including creation and implementation of alleged illegal marketing program); Van Den Eng v. The Coleman Co., Inc., 2005 U.S. Dist. LEXIS 40720 (D. Kan.), (CEO had been copied on a memorandum regarding the design and development of subject product at issue in products liability wrongful death case and was also in charge of making product correction and recall decisions); Horsewood v. Kids "R" Us, 1998 U.S. Dist. LEXIS 13108 (D. Kan.) (In disability discrimination case, Vice President of Human Resources and Corporate Employee Relations had developed Plaintiff's job description, which purportedly defined essential functions of the job, and "also had responsibility and familiarity with creating, implementing, and enforcing the ADA policies of the defendant.")

For all the reasons stated above, as well as in WGI's Motion for Protective Order, WGI requests that the Court issue an order prohibiting the EEOC from deposing Mr. Hanks. WGI requests a hearing on this issue.

Respectfully submitted,

WASHINGTON GROUP INTERNATIONAL, INC.,

By its attorneys,

/s/Stephen T. Paterniti
Andrew C. Pickett, BBO #549872
Stephen T. Paterniti, BBO #564860
Jackson Lewis LLP
75 Park Plaza
Boston, MA 02116
(617) 367-0025

Dated: January 22, 2007

### CERTIFICATE OF SERVICE

This is to certify that this document was filed through the ECF System and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies to those indicated as non-registered participants.

\s\Stephen T. Paterniti
Jackson Lewis LLP